IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CAROLYN ANN BROWNING, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:13-CV-1562-D |
| VS. § | |
| § | |
| CAROLYN W. COLVIN, § | |
| ACTING COMMISSIONER, SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION

Plaintiff Carolyn Ann Browning ("Browning") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II and supplemental security income under Title XVI. For the reasons that follow, the Commissioner's decision is affirmed.

I

On March 23, 2011 Browning filed a Title II application for a period of disability and disability insurance benefits. She also protectively filed a Title XVI application for supplemental security income. In both applications, she alleged a disability beginning September 23, 2010. Her application was denied initially and on reconsideration. Following a hearing, the administrative law judge ("ALJ") found that Browning is not disabled.

The ALJ followed the five-step sequential process prescribed in 20 C.F.R.

§ 404.1520(a)(4) (2013). At step one,[1] he concluded that Browning has not engaged in substantial gainful activity since September 23, 2010 (the alleged onset date).

At step two, the ALJ determined that Browning has the following severe impairments: cervical disc disease and hypertension. He found that Browning's depression is nonsevere, presented no more than a mild limitation, and did not cause more than minimal limitation on her ability to perform basic mental work activities. In reaching this conclusion, the ALJ applied the psychiatric review technique ("PRT") and considered the four broad functional areas set forth in § 12.00C of the Listing of Impairments (20 C.F.R. § 404.1520, Subpart P, Appendix 1): daily living; social functioning; concentration, persistence or pace; episodes of decompensation. He found that Browning has no limitations in the first, second, and fourth areas, and a mild limitation in the third. He therefore concluded that Browning's mental impairment is nonsevere.

At step three, the ALJ found that Browning does not have an impairment or combination of impairments that meets or medically equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Browning has the following residual functional capacity ("RFC"):

---

[1]Prior to reaching this conclusion, the ALJ found that Browning meets the insured status requirements of the Act through December 31, 2014.

> the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she must avoid climbing ladders, ropes, or scaffolds. She is also limited to occasional climbing of ramps and stairs, and occasional bending, stooping, and overhead reaching bilaterally. Further, she cannot keep her head or neck in the same position for longer than one hour.

R. 25 (bold font omitted).

At step four, based on the hearing testimony of the vocational expert ("VE"), the ALJ found that Browning is capable of performing past relevant work as a production coordinator, sedentary and skilled, because this work does not require the performance of work-related activities precluded by Browning's RFC.

At step five, the ALJ made the alternative finding that, considering Browning's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Browning can perform, including mail clerk, photocopy machine operator, and counter clerk.

The ALJ therefore found that Browning has not been under a disability, as defined in the Act, from September 23, 2010 through the date of his decision. He denied Browning's application for a period of disability and disability insurance benefits and her application for supplemental security income on the basis that she is not disabled under the Act.

Browning sought review by the Appeals Council, which denied her request, and the ALJ's decision became the final decision of the Commissioner. Browning now seeks judicial review based on the following three contentions: (1) the PRT is not based on substantial evidence, making the step two findings erroneous; (2) the hypothetical question posed to the

VE did not reasonably incorporate all of Browning's disabilities, as recognized by the ALJ; and (3) the ALJ erred by not considering 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 factors before declining to give weight to the opinions of Browning's treating specialist.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per

curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g.,*

*Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2011). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id*. Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id*. The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Browning first contends that the Commissioner and ALJ failed to fulfill their duty to base the PRT findings on substantial evidence.

A

Browning essentially argues that the ALJ erred in performing the PRT, and his evaluation of the severity of Browning's mental impairment is not based on substantial evidence but is instead based on his own lay opinion, because he did not order a psychological consultative exam ("CE") by a medical examiner ("ME"), did not have the ME complete the PRT, failed to develop the relevant facts and substantiate his findings that Browning does not have severe mental impairments, and the record indicates that her limitations in the four PRT functional areas are more severe than the ALJ found. Browning maintains that the ALJ's procedural failures are harmful error because, given the strength of the evidence of her mental depression, conclusions different from the ALJ's are conceivable. She relies on the following evidence in the record to demonstrate that her mental impairments are severe: Dallas MetroCare Services ("MetroCare") determined that she had a GAF score of 44; during her period of treatment with MetroCare, she exhibited severe depression; she testified that she does not like to be around people much; and she has difficulty concentrating.

In response, the Commissioner argues that Browning's evidence of mental impairments is limited; that the ALJ discussed in detail the objective medical evidence (including the MetroCare records, in particular) and found that her objective mental status

was still within normal limits; the GAF score of 44 is derived from "an other medical source" not "an acceptable medical source"; the ALJ properly found that Browning does not have a severe mental impairment since symptoms of depression do not automatically equate to a medically determinable mental impairment; Browning did not demonstrate that her depression caused even minimal work-related limitations; the evidence (including findings by Hardeep Rai, M.D. ("Dr. Rai"), Browning's treating physician) contradicts Browning's allegations; and Browning failed to meet her burden of demonstrating that she had severe mental impairments, the ALJ had no duty to request a CE, and the ALJ's findings did not prejudice Browning.

B

"The ALJ's duty to undertake a full inquiry . . . 'does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision.'" *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam) (emphasis in original) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (per curiam)). "The decision to require such an examination is within the discretion of the ALJ." *Id.* (citing *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)). "Reversal is appropriate, however, only if the applicant shows that she was prejudiced." *Reynaud v. Astrue*, 226 Fed. Appx. 401, 402 (5th Cir. 2007) (per curiam). "Prejudice can be established by showing that had the ALJ adequately performed his duty, he 'could and would have adduced evidence that might have altered the result.'" *Id.* (quoting *Kane*, 731 F.2d at 1220).

Even if the court assumes *arguendo* that the ALJ abused his discretion by failing to order a CE, Browning has failed to demonstrate that this could and would have adduced evidence that might have altered the result.  As noted, Browning relies on the following evidence to establish that her mental impairments are more severe than the ALJ found: her GAF score of 44; she exhibited severe depression while being treated by MetroCare; her testimony that she does not like to be around people much; and evidence that she has difficulty concentrating.  None of these facts, alone or in combination, is sufficient to show that completion of the PRT by an ME could and would have adduced evidence that might have altered the result.

The GAF score of 44 is reflected in a February 17, 2012 treatment plan completed by Monica R. Thomas ("Nurse Thomas"), an Advanced Practice Nurse ("APN").  Nurse Thomas is an APN, not a physician or psychologist.  An APN is not an "acceptable medical source," but is considered an "other medical source" under 20 C.F.R. § 404.1513(d)(1).  The opinion of an "other medical source," even one who has regularly treated the claimant, is not entitled to the same deference as an opinion provided by an "acceptable medical source." *Thibodeaux v. Astrue*, 324 Fed. Appx. 440, 445 (5th Cir. 2009) (per curiam).  "Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight."  *Id.*[2]

---

[2]Browning contends in her reply brief that it is improper for the Commissioner to contend that Nurse Thomas is not an "acceptable medical source" because the ALJ did not

Browning argues that the score should be accorded the weight given to an acceptable medical source because Dr. Ikechukwu Ofomata ("Dr. Ofomata") oversaw her treatment, and, because Dr. Ofomata did not alter Nurse Thomas' GAF, this indicates that he agreed with the score. She maintains that MetroCare, not just Nurse Thomas, was her treating source, and MetroCare qualifies as an acceptable medical source, requiring that the ALJ consider the factors of 20 C.F.R. § 404.1527(c) before rejecting the GAF score. But the authorities she cites do not support her conclusion that a diagnosis or medical finding akin to a GAF score should be deemed to be that of an acceptable medical source when not rendered by someone who actually qualifies by regulation as an acceptable medical source. Her assertion that Dr. Ofomata's failure to alter the GAF score indicates his agreement with it is pure supposition that is not even supported by a reasonable inference from the record. And Browning's overall diagnosis at MetroCare, of which the GAF score is a part, is "MAJOR DEPRESSIVE DISORDER, *SINGLE EPISODE*, SEVERE WITH PSYCHOTIC FEATURES," R. 376 (emphasis added); the examination notes from the same day indicate that Browning's mental status is normal in many of the functional categories; and the

---

reject the GAF score on that basis. She invokes the rule that the ALJ's decision "must stand or fall with the reasons set forth in the ALJ's decision." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). This is a misapplication of *Newton*. As this court has explained before, *Newton* and the case it cites, *Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985), address substantial evidence issues. *Newton* should not be interpreted to require that ALJs write opinions that give detailed explanations for why they accepted or rejected certain evidence. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("The ALJs work under great burdens . . . . When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits.").

treatment plan reflects that the expected course of treatment is three months, all of which provide substantial evidence to support the ALJ's specific finding (which references the MetroCare records) that "[t]he mental status examination was virtually within normal limits." *Id.* at 23.

Browning notes that she was treated at MetroCare for severe depression. But there is substantial evidence to support the ALJ's finding under the PRT that Browning's "medically determinable mental impairment of depression does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere," *id.* at 24, as well as his constituent findings under the four broad functional areas of § 12.00C that she has no limitations in the activities of daily living and social functioning, has experienced no episodes of decompensation that have been of extended duration, and has mild limitation in the functional area of concentration, persistence, or pace. Records from MetroCare indicate that Browning exhibited an organized thought process, normal speech, cooperative behavior, intact memory, and normal attention. Additionally, although Browning was seen by several physicians during the relevant time period, no physician noted that Browning suffered from a mental impairment. In fact, a January 9, 2012 record from Dr. Rai, Browning's treating physician, indicates that Browning was alert and intact neurologically, with no abnormalities in her insight or judgment. Finally, in her disability applications, Browning indicated that she did not have trouble completing tasks, concentrating, understanding, following instructions, or getting along with others. Accordingly, not only did the ALJ not commit reversible error by failing to arrange for an

ME to complete the PRT following a consultative examination, the ALJ's findings based on his application of the PRT are supported by substantial evidence.

IV

Browning next argues that the ALJ's hypothetical question to the VE did not reasonably incorporate all of her disabilities as recognized by the ALJ.[3]

A

The ALJ posed a hypothetical to the VE that took into account all of Browning's physical impairments. As plaintiff acknowledges, "[t]he hypothetical question mirror[ed] the RFC." P. Br. 13.[4] But plaintiff complains that the ALJ also found that she suffers from mild

---

[3]In her reply brief, plaintiff contends that she has essentially two complaints about the hypothetical question posed to the VE, one of which is that the PRT findings of none and mild are not based on substantial evidence. This assertion, however, is not precisely on point, because plaintiff is challenging how the hypothetical question was framed rather than whether the hypothetical was based on substantial evidence. Moreover, for the reasons explained above, the court concludes that the ALJ's PRT findings are based on substantial evidence.

[4]The ALJ posed the following question to the VE:

> Assume this individual has the following limitations; assume the individual can do light work as defined in our regulations and by the Secretary of Labor . . . . However, there are further limitations such as no climbing ladders, ropes and scaffolds; occasional climbing of ramps and stairs. Also, occasional bending, stooping and overhead reaching, obviously bilaterally, all of that occasional and in addition, the individual cannot keep his or her head or neck in the same position for longer than one hour. Would such an individual be able to do any of the past work of this particular claimant or not at all?

R. 64-65.

limitations in concentration, persistence, or pace, and that the ALJ did not include this limitation in the hypothetical. She therefore maintains that the ALJ committed reversible error by failing to adhere to the requirement that he incorporate reasonably all recognized disabilities. The Commissioner argues on various grounds that the ALJ did not err, but the court need only consider her contention that Browning had, and took, the opportunity to correct any perceived defects in the ALJ's hypothetical question.

B

> Under *Bowling*, if the administrative law judge's hypothetical omits a recognized limitation "and the claimant or his representative is afforded the opportunity to correct deficiencies in the administrative law judge's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the administrative law judge's findings and disabilities recognized but omitted from the question)," there is no reversible error.

*Wise v. Barnhart*, 101 Fed. Appx. 950, 951 (5th Cir. 2004) (per curiam) (quoting *Bowling*, 36 F.3d at 436). Where the claimant's "representative was allowed to cross-examine the [VE] regarding the [ALJ's] hypothetical[,] . . . even assuming, *arguendo,* that the [ALJ's] hypothetical was deficient in the respects urged on appeal, because [the claimant's] representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error." *Id*. (citing *Bowling*, 36 F.3d at 436). *See also, e.g., Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. June 18, 2001) (per curiam) (unpublished table decision) ("[Plaintiff] does not dispute that his non-attorney representative was allowed to cross-examine the VE regarding the ALJ's hypothetical question. Thus, even assuming,

*arguendo,* that the ALJ's hypothetical question was deficient in the respects urged on appeal, affording [the claimant's] representative an opportunity to correct any perceived deficiencies precludes a finding of reversible error.").

In this case, Browning's attorney was afforded an opportunity to, and did, cross-examine the VE in order to correct deficiencies in the ALJ's question by mentioning or suggesting to the VE any purported defects in the hypothetical. Browning's attorney was aware of the mental limitations that Browning was alleging, and, after the ALJ failed to include mental limitations in the hypothetical, asked the VE in her cross-examination whether Browning could perform the job of production coordinator if she "was limited to understanding, remembering and carrying out simple instructions," and whether there would be "transferable skills to sedentary . . . [w]ork if the individual was limited to understanding, remembering and carrying out simple instructions[.]" R. 67.

Browning maintains, however, that she must be given a "real" opportunity to correct the defects in the hypothetical in order for the error not to be reversible, and she posits that she had no such opportunity because she had no way of knowing that the ALJ would determine that she has moderate and mild mental limitations.[5] The court disagrees.

First, this contention is not supported by the law of this circuit, which only requires that the claimant's attorney or representative be given the opportunity through cross-examination to correct deficiencies in the ALJ's question by mentioning or suggesting to the

---

[5]The Commissioner disagrees that the ALJ made such a determination, *see* D. Br. 13 n.7, but the court will assume *arguendo* for purposes of this argument that he did.

- 14 -

VE any purported defects in the hypothetical questions, "including *additional disabilities not recognized by* the ALJ's findings." *Bowling*, 36 F.3d at 436 (emphasis added).

Second, even if more than such an opportunity were required, Browning's attorney knew at the time of the hearing that Browning was seeing a mental health worker, that she does not like being around people much, and that she sometimes has problems with memory and concentration. Her questions to the VE on cross-examination demonstrate that she contemplated that Browning might rely on evidence of such limitations to establish that she is disabled.

Because Browning's attorney was clearly afforded the opportunity on cross-examination to correct deficiencies—assuming there were any—in the ALJ's hypothetical to the VE by mentioning or suggesting any purported defects in the hypothetical, any error is not reversible error.

V

Finally, Browning contends that the ALJ erred by failing to consider the 20 C.F.R. §§ 404.1527 and 416.927 factors before declining to give weight to her treating specialist. She essentially asserts what is known as *Newton*-type error.

A

Browning contends that the ALJ implicitly rejected the opinions of two of her treating physicians, Byron E. Strain, M.D. ("Dr. Strain") and Kavitha Nalla, M.D. ("Dr. Nalla"). She cites Dr. Strain's opinion limiting her to performing work in sedentary light-duty positions with certain restrictions and Dr. Nalla's restrictions on Browning's work activities, and she

maintains that neither physician's opinion would allow her to perform a full range of light work. The Commissioner responds that the ALJ did not commit *Newton*-type error because he relied on the opinions of Browning's treating and examining physicians. Addressing Browning's assertion that the medical source statements of Drs. Nalla and Strain would not allow her to perform the full range of light work, the Commissioner maintains that the ALJ only found that Browning could perform a restricted range of light work. Browning argues in reply that the ALJ was still required to explain the weight given to the treating physicians and provide a rationale for the weight given, and, even if he did not give a treating source controlling weight, the source was still entitled to deference and must be weighed by using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.

B

Under *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Id*. at 456. The ALJ may give little or no weight to a treating source's opinion only if good cause is shown. *Id.* at 455-56. Here, however, the ALJ did not decline to give weight to the medical source statements and opinions of Drs. Strain and Nalla. Browning has therefore failed to establish reversible *Newton*-type error.

On October 7, 2010 Dr. Nalla treated Browning after she slipped and fell at work, "hurting [her] head, neck, shoulders, arms, and right knee." R. 255. Dr. Nalla noted that Browning could return to work, but could not climb, drive or operate machinery, or function in a safety-sensitive position. Dr. Nalla also noted that Browning should avoid overhead

work. Dr. Strain opined on February 7, 2011 that Browning was able to return to "a sedentary light-duty position with no overhead reaching or lifting. She should be able to lift/carry 10-15 pounds. She should be able to push/pull 10-15 pounds." *Id.* at 271. The ALJ noted in his decision the "Physician Activity Status Report" (a report that Dr. Nalla completed) in which Dr. Nalla released Browning to "return to work on October 7, 2010 with the following restrictions: unable to drive or operate machinery, no climbing, and may not function in a safety sensitive position." *Id.* at 22. He also noted a "Texas Workers' Compensation Work Status Report" completed by Dr. Strain that

> indicated that the claimant could return to work as of February 7, 2011 with the restrictions of: lift/carry objects more than 10-15 pounds for more than 4 hours per day, walking a maximum of 6 hours per day, no climbing stairs or ladders, no overhead reaching, pushing/pulling a maximum of 4 hours per day, bending stooping a maximum of 6 hours per day, and no running.

*Id.* at 23. The ALJ found that Browning can perform "light work" with the following restrictions:

> she must avoid climbing ladders, ropes, or scaffolds. She is also limited to occasional climbing of ramps and stairs, and occasional bending, stooping, and overhead reaching bilaterally. Further, she cannot keep her head or neck in the same position for longer than one hour.

*Id.* at 25 (bold font omitted). The ALJ did not find that Browning can perform the full range of light work without restrictions. It is therefore apparent from the ALJ's RFC finding that he in fact gave weight to the opinions of Drs. Strain and Nalla. No further explanation or discussion of the 20 C.F.R. §§ 404.1527 and 416.927 factors was necessary in these

- 17 -

circumstances.  Browning has therefore failed to show reversible error on this ground.

\* \* \*

Accordingly, for the reasons explained, the Commissioner's decision is

AFFIRMED.

December 3, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE